Justice KENNEDY, concurring.
My join in the Court's opinion is unqualified; for, in my view, it is complete and correct in all respects. This separate writing responds only to one factual circumstance, mentioned at oral argument but with no direct bearing on the precise legal questions presented by this case.
In response to a question, respondent's counsel advised the Court that, since being sentenced to death in 1989, Ayala has served the great majority of his more than 25 years in custody in "administrative segregation" or, as it is better known, solitary confinement. Tr. of Oral Arg. 43-44. Counsel for petitioner did not have a clear opportunity to enter the discussion, and the precise details of respondent's conditions of confinement are not established in the record. Yet if his solitary confinement follows the usual pattern, it is likely respondent has been held for all or most of the past 20 years or more in a windowless cell no larger than a typical parking spot for 23 hours a day; and in the one hour when he leaves it, he likely is allowed little or no opportunity for conversation or interaction with anyone. Ibid.; see also Wilkinson v. Austin,545 U.S. 209, 218, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005); Amnesty International, Entombed: Isolation in the U.S. Federal Prison System (2014). It is estimated that 25,000 inmates in the United States are currently serving *2209 their sentence in whole or substantial part in solitary confinement, many regardless of their conduct in prison. Ibid.
The human toll wrought by extended terms of isolation long has been understood, and questioned, by writers and commentators. Eighteenth-century British prison reformer John Howard wrote "that criminals who had affected an air of boldness during their trial, and appeared quite unconcerned at the pronouncing sentence upon them, were struck with horror, and shed tears when brought to these darksome solitary abodes." The State of the Prisons in England and Wales 152 (1777). In literature, Charles Dickens recounted the toil of Dr. Manette, whose 18 years of isolation in One Hundred and Five, North Tower, caused him, even years after his release, to lapse in and out of a mindless state with almost no awareness or appreciation for time or his surroundings. A Tale of Two Cities (1859). And even Manette, while imprisoned, had a work bench and tools to make shoes, a type of diversion no doubt denied many of today's inmates.
One hundred and twenty-five years ago, this Court recognized that, even for prisoners sentenced to death, solitary confinement bears "a further terror and peculiar mark of infamy." In re Medley,134 U.S. 160, 170, 10 S.Ct. 384, 33 L.Ed. 835 (1890); see also id., at 168, 10 S.Ct. 384("A considerable number of the prisoners fell, after even a short [solitary] confinement, into a semi-fatuous condition ... and others became violently insane; others, still, committed suicide"). The past centuries' experience and consideration of this issue is discussed at length in texts such as The Oxford History of the Prison: The Practice of Punishment in Western Society (1995), a joint disciplinary work edited by law professor Norval Morris and professor of medicine and psychiatry David Rothman that discusses the deprivations attendant to solitary confinement. Id., at 184, 10 S.Ct. 384.
Yet despite scholarly discussion and some commentary from other sources, the condition in which prisoners are kept simply has not been a matter of sufficient public inquiry or interest. To be sure, cases on prison procedures and conditions do reach the courts. See, e.g.,Brown v. Plata,563 U.S. ----, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011); Hutto v. Finney,437 U.S. 678, 685, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)("Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under the Eighth Amendment"); Weems v. United States,217 U.S. 349, 365-367, 30 S.Ct. 544, 54 L.Ed. 793 (1910). Sentencing judges, moreover, devote considerable time and thought to their task. There is no accepted mechanism, however, for them to take into account, when sentencing a defendant, whether the time in prison will or should be served in solitary. So in many cases, it is as if a judge had no choice but to say: "In imposing this capital sentence, the court is well aware that during the many years you will serve in prison before your execution, the penal system has a solitary confinement regime that will bring you to the edge of madness, perhaps to madness itself." Even if the law were to condone or permit this added punishment, so stark an outcome ought not to be the result of society's simple unawareness or indifference.
Too often, discussion in the legal academy and among practitioners and policymakers concentrates simply on the adjudication of guilt or innocence. Too easily ignored is the question of what comes next. Prisoners are shut away-out of sight, out of mind. It seems fair to suggest that, in decades past, the public may have assumed lawyers and judges were engaged in a careful assessment of correctional *2210 policies, while most lawyers and judges assumed these matters were for the policymakers and correctional experts.
There are indications of a new and growing awareness in the broader public of the subject of corrections and of solitary confinement in particular. See, e.g., Gonnerman, Before the Law, The New Yorker, Oct. 6, 2014, p. 26 (detailing multiyear solitary confinement of Kalief Browder, who was held-but never tried-for stealing a backpack); Schwirtz & Winerip, Man, Held at Rikers for 3 Years Without Trial, Kills Himself, N.Y. Times, June 9, 2015, p. A18. And penology and psychology experts, including scholars in the legal academy, continue to offer essential information and analysis. See, e.g.,Simon & Sparks, Punishment and Society: The Emergence of an Academic Field, in The SAGE Handbook of Punishment and Society (2013); see also Venters et al., Solitary Confinement and Risk of Self-Harm Among Jail Inmates, 104 Am. J. Pub. Health 442 (March 2014); Metzner & Fellner, Solitary Confinement and Mental Illness in U.S. Prisons: A Challenge for Medical Ethics, 38 J. Am. Academy Psychiatry and Law 104-108 (2010).
These are but a few examples of the expert scholarship that, along with continued attention from the legal community, no doubt will aid in the consideration of the many issues solitary confinement presents. And consideration of these issues is needed. Of course, prison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose discipline and to protect prison employees and other inmates. But research still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price. See, e.g., Grassian, Psychiatric Effects of Solitary Confinement, 22 Wash. U.J.L. & Pol'y 325 (2006)(common side-effects of solitary confinement include anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors). In a case that presented the issue, the judiciary may be required, within its proper jurisdiction and authority, to determine whether workable alternative systems for long-term confinement exist, and, if so, whether a correctional system should be required to adopt them.
Over 150 years ago, Dostoyevsky wrote, "The degree of civilization in a society can be judged by entering its prisons." The Yale Book of Quotations 210 (F. Shapiro ed. 2006). There is truth to this in our own time.